Good morning, Your Honors. May it please the Court, I would like to briefly address the Respondent's primary argument of the violation of the statute of limitations, and then respond to the Justice's questions and reserve whatever time is left for rebuttal. The Respondent contends that the appellant violated the statute of limitations by the submissions of their complaint. This argument is premised upon the theory that the third draft of the EIR was submitted on August 4th, 1995, and that any action must have been filed at the very least within one year of that date. However, this theory does not take into consideration the application of the Court's ruling in Myers v. County of Orange, which I cited in my reply brief. The Myers Court concluded that the applicable statute of limitations is told during the administrative review process, quote, including the mandate proceedings, end quote. Now, although the third draft of the EIR was submitted on August 4th, 1995, the appellant filed a writ of mandamus and a civil rights claim on May 17th, 1996, just nine months later. These mandamus proceedings were not completed until January 29th of 2004. What was the status of the EIR when the mandamus proceedings were completed? No decision had been made. So the city still had not acted on the submission? That's correct, Your Honor. Now, given those facts, the applicable statute was told for the complete period, and that period is seven years, eight months, and seven days, from the moment that the action was filed from 5-17-96 to the time that the mandamus proceedings were completed in January 29th of 2004. Has the EIR ever been acted on? No, Your Honor. Still to this day, even though the county is compelled to do so by statute and was compelled to do so by the appellate court. Still no action. Now, are there any disputed questions of fact surrounding the statute of limitations issues? Well, this is a legal argument, Your Honor. So at this stage, no. I think that may segue into the, I think, the 800-pound gorilla here, which is the district court offered no explanation for why it granted summary judgment. Right. And there's several ways we can go. I mean, we can, as an appellate panel, sit at the district court and decide the summary judgment motion. Or we can send the case back to the district court and say, please tell us why you granted summary judgment. Correct. So what are your thoughts about that? Well, at this stage, it is my impression that Judge Hatter is no longer there. And so ‑‑ Is he retired now, or is he just senior? I believe he is retired. However, they do, I believe that they call him back for certain cases and certain cases only. Now, whether they would call him back to render a decision on this and to come back with some type of findings of fact, I have no idea. Well, you know, I took a look at the two parties' statement of genuine issues and undisputed facts, and it seems like every single fact is disputed. Correct. I don't know how summary judgment can be granted. I mean, my thought was maybe we send it back and say there are genuine issues in dispute, but not even take the time to go through and specify all of them. Well, we would gladly submit, Your Honor, on that. However, that's the same confusion that we were under. A one-sentence order granting the motion does absolutely nothing for Your Honors to be able to render a sufficient opinion, and it absolutely does nothing for us when we're attempting to appeal the decision. We have to take a broad-stroke approach to this motion and attempt to ---- Well, let me say where I'm coming from, and I'll put my district judge hat on for a second. One of the beneficial things about summary judgment motions is that they can narrow a case. You can prune the issues. You can decide what really is in dispute and what isn't. There are both complex issues in this case regarding the statute of limitations and equitable tolling, and there are also issues going to the merits as to whether there was improper conduct by the city in processing the EIR. If we simply send it back and say, well, the district court shouldn't have granted summary judgment because there are one or more It just says go back and have at it. I'm wondering, as a matter of thoughtful administration of the case, if it wouldn't make more sense to give the district court an opportunity to carry that function out and say either there is or is not a statute of limitations bar, there is or is not failure proof on the alleged discrimination. Otherwise, you're going to go back and have to try everything. And I concur with Your Honor. I mean, just in terms of judicial economy, to me, it does not make any sense not to attempt to prune these issues so that the parties, at the very least, have an understanding of where the case is headed and where to attack it. The problem is if it goes back to Judge Hatter, we may just get back the same thing. Or if it goes, if he's not, and then we'd be, I've had this happen to me before, not necessarily with Judge Hatter, but you'd have to appeal it again. And then so I guess if we could decide the statute of limitations issue, if there were undisputed issues of fact there, that would be helpful to you. But I don't see anything that's undisputed in your papers. So this has been quite an interesting litigation. Yes, Your Honor. It has. Almost 20 years. Yeah, maybe we should send it to another judge and make sure that there's a judge that will look at the issues. Your Honor, and I'm sure that my client would not disagree with that. What's the effect of the fact that your client voluntarily dismissed the state action in January 2004, so that there really, as a matter of state law, we don't know whether the city erred in not processing the EIR? Well, Your Honor, at that point it had been almost eight years. They had the opportunity to file, well, let me back up. The third draft of the EIR had been submitted. They attempted to informally negotiate the terms of the information that was necessary. Those informal negotiations went nowhere. They had an appellate court decision that was ordering them to make a decision. They had, once again, the code section that ordered them to make a decision. Nothing came about as a result of that. But then the court said, well, we'll send it back to the trial court, because if, in fact, Sunset had not paid the reasonable fees or provided the information, then perhaps the city didn't make a mistake in not processing the EIR. And then your client voluntarily dismissed it. We never got the answer from the trial court as to whether the city had erred or not. Well, Your Honor, the ability to, I think the prior counsel saw that stage of the proceedings as an opportunity to bring it to the federal level. It was not as though these issues that were before the court had not already been before the court. The issue of the payment and the non-cooperation were issues that came up after the fact. The issue of the money, that issue had come before the court already. Sunset Drive had paid $105,000 already. And there was testimony in the record that they could not account for anything above $21,000. So these issues came up after the fact, and once again, my client felt it's just a matter of something else. Same thing that's been going on for almost 20 years. Every time we get to the stage where they're compelled to issue a decision on this EIR, they come up with something else. They're not cooperating. They didn't pay. Well, after $105,000, my client has a right to say, I'm not paying anything else that's not reasonable. You have to justify it. And what do they do? They come back and say, well, we can only justify $21,000 of the $105,000 that you've already paid. So I think my client at that point in time was justified in going to the next level here. Good morning, Your Honor. Howard Golds on behalf of the City of Redlands. I'm not sure where to start. We have a judgment in your favor that says nothing to us. We do. And if you looked at the record, you would see that at the very beginning of the case, we brought a motion to dismiss, which Judge Hatter, I think, had under submission for nine months, and then issued a one-sentence ruling denying our motion to dismiss. So I do understand the frustration. Nonetheless, I think if you, and the papers, without being overly critical, there's a lot of stuff in them, at least from our standpoint, from the other side, that is an attempt to obfuscate what is going on here. If you look at the basic facts relating to the statute of limitations, as was raised earlier, there is no disputed facts. Nothing happened regarding this development after some time in 1996, and that's undisputed. Well, let me just ask sort of a question here. You know, I might agree with you. I'm not necessarily saying that I do, but I might agree with you that the statute of limitations and equitable tolling arguments are not real persuasive, and that the merits case is weak. So let's assume for the sake of discussion that that's my view of this case. How is it appropriate for an appellate panel on de novo review to make that assessment when you've got a record that goes back 20 years? I mean, for you to get where you want to go, which is to have this judgment affirmed, even if at the end of the day you're right, it's as if the district court didn't exist. Well, I don't disagree. Well, obviously, first of all, it is de novo review, and so it seems like you would be doing that level of review anyway. But under the prior case law, there is some case law on this about why district courts need to issue reasoned decisions. I mean, if this was a frivolous case, it was a frivolous plaintiff's case and a frivolous appeal, judicial economy might say, well, why bother sending it back for what we know is inevitably going to happen. But short of that, I mean, if we affirm your judgment, even if at the end of the day you're right, we've essentially said the district court is superfluous. It was just a way station. It reminds me of the way some patent lawyers feel about the Federal Circuit, you know, because they review so many cases, they reverse so many district court decisions. But, you know, there's a place for the district court to look at the record, make a reasoned assessment, define what the issues are and are not, and we're just blowing that whole thing off if we affirm your judgment. So tell me why I should anyway. Well, you should anyway because the city also has an interest in justice here, and the city has spent a lot of money and a lot of time defending these lawsuits over a great deal of time that we believe we had a well-taken motion to dismiss at the beginning of this case. You know, what strikes me is, I mean, I admit I didn't, I read the genuine issues of material back at those sites for filings and said, I'm not sure I really know what happened here. But the city, from what I can see, the city isn't entirely blameless here because it's under a legal obligation to act. It's gone to the California Court of Appeals twice, you've been ordered to act, your client, and you haven't acted. Your Honor, with all due respect, that's not true. The city was under no obligation. First of all, the way, and this is in our briefs, the way that the California laws. It was in your briefs, but it's not what the California Court of Appeals opinions say. The California Court of Appeals decision has no one other than the trial court once in a reverse decision ordered us to do anything. The fact of the matter is, and it's undisputed, is that Sunset, through Mr. Selinger, decided he wanted to prepare the EIR as opposed to the city preparing the EIR. That is not, and it is undisputed, the way that it is done, generally speaking, under California law. It is done by the responsible public entity. Mr. Selinger, and it is undisputed, decided that having the responsible public entity do the work was too expensive. And so he decided to undertake that task. He undertook that task, but it is undisputed that the city under CEQA must exercise its independent judgment to determine the propriety of the EIR. Three times they submitted draft EIRs. Three times we found them to be inappropriate and not consistent with CEQA. And frankly, that's undisputed. There is no evidence in this case from the other side that ever says our EIRs were fine. To the contrary, the consultant who prepared the EIR, at least as to the first two drafts, I believe, generally concedes that they're not fine and that the city's criticisms of the EIR were, in fact, proper and appropriate. So we have EIRs that are not appropriate. We have the other side conceding they're not appropriate. They have presented no evidence to the trial court and no argument before this court that those EIRs were fine. We have no court ever saying the city has a, quote, duty to process this EIR, other than a trial court decision that was reversed. Well, the state appellate court did say that the city, regardless of the applicant's inadequate EIR, if it was, that the city has an independent obligation to comply with CEQA and to prepare an EIR for the project. I think the court of appeal, in a demur, said you might be able to state a cause of action like that. No one ever adjudicated that. That particular line has been oft repeated in this case, as has the line that we were somehow obligated to follow the writ, the trial court issue, which also is not true, because California law is clear that when a public entity appeals a writ, that enforcement of the writ is stayed. And it'd be appealed, and, in fact, we won on appeal. And it was stayed. And so the city, the problem that I have with much of this, is that the city does everything it's supposed to do. It's trying to follow CEQA, which is a statute that it cannot waive, that is applicable to low-income housing as it is applicable to any other construction. And it's trying to follow this, and you have a developer who is, frankly, overtly cutting corners, doesn't want to pay the money to have this done for what is a large project. This is 328 single-family homes and another 82 apartments. He doesn't want to do it, and the city is trying to enforce the law. And so then when he files suit in 96, and this comes back to, I think, the court's  case, he picks the mandate, and he picks a civil rights claim. But he doesn't pick the FHA claim. He doesn't go after this fair housing thing. He ignores it, even though the initiatives that they spend so much time talking about in their briefs were on the books before any of this occurred. I mean, the first initiative goes back to 1978. And, frankly, all the things they claimed we were doing, we had already been doing. So there's two narratives here. One narrative is I'm trying to build low-income housing in a city that doesn't want it, and they just keep throwing out barriers. And then your narrative is you're just trying to follow the law, and you have a developer who won't take no for an answer and who doesn't. We'll stop at nothing to create trouble. And you have a record that's many volumes long, and it goes back to the question I had before. I mean, how is this something that's so transparent that we should not follow the general rule and decide it as an appellate court as if there had been no trial court to consider it? I mean, your narrative may be the right one, you know, but how can we tell by just looking at the record and saying, you know, this is so obvious that there's no role for a trial court to do the kind of, and, you know, just to make my question even a little bit more complicated, there are requests for judicial notice, there are evidentiary objections, there are all kinds of things that involve the discretion of the trial court that are not addressed because we have a one-line order. So we don't even know what record the district court actually considered. And I understand this Court's concern, but if you look at the record and you look at the briefs, there's no question and there's no dispute that the statute of limitations had run, so you have to find a reason to have told it. They have presented three reasonably simple grounds to toll the statute of limitations. One is a continuing violation claim, which we address in our briefs. And the fact is there is no continuing violation, there's continuing harm, but not, or alleged harm, but there's not a continuing violation. So that one seems not to apply. There's an equitable tolling claim, which I think, as Your Honor noted, we don't believe has any merit, but it's within a small sort of space of you can look at that particular argument and see, it appears to us, they just selected remedies and this particular remedy, the Fair Housing Act remedy, they didn't select. And that's not a ground equitable toll. I was a former district court judge and sitting with a district court judge, what you really need in this case is some kind of case management order where the judge takes, says, we're going to have cross motions for summary judgment on that statute first to see whether this case can even go forward, deal with that issue, and then maybe the rest of it goes away. But there's factual questions in there, and it's really not our role to make those findings. I feel like you're asking me, I'm listening to the arguments, and I feel like you're asking me to make findings of fact. No, I'm saying that obviously we're not responsible to the district court judge. The other side, after the motion for summary judgment, we have in good faith and diligently fought this matter, we have brought a motion which I think was meritorious on its face, and Judge Hatter, who had the pace for quite some time, granted it. I don't think you can ignore the fact that Judge Hatter, who obviously is an experienced district court judge, granted the motion and granted it summarily based on what he saw in front of him. And so you're not responsible if the district court judge did, I'm not responsible, but for this court to not look at the record and to not make a decision is to some extent I think unfair to my client who has done what it was supposed to do. It's not its fault that Judge Hatter didn't make a decision. I'm very sympathetic to your client, and I'm very sympathetic to the appellant as well. And I do think it's the responsibility of the judiciary to provide reasoned decisions and not put litigants into this position where there's inefficiency and you have to spend more money to get your hearing. And so I will apologize to you for that. I respect Judge Hatter very, very much. He was chief judge of the court, and I worked with him when I was on that court. But I don't know what, you know, I don't know what his thinking was on this case. I would submit to the court that as much as I am all in favor of judicial economy, the economic thing to do is to have this court take a hard look at this case and make a decision on the merits. That is, in fact, I think to the benefit of both sides. It may be, and I think the circuit court does have discretion, and the Couveau case says that expressly. But the precedent that it sets, frankly, troubles me. You know, and it could be buried in a memorandum of disposition, I suppose. But the precedent of saying it's sort of no harm, no foul if the district court just issues a one-liner. I mean, that, and I'm making more work for myself as a district judge, but that precedent troubles me a lot. I don't know what Judge Hatter's custom and practice was, but it is hard. It's changed over time, I'll say that. It's hard to believe that we're the only case he ever issued a one-liner on. It just strikes me that the arguments are, in fact, framed in the briefs. The briefs are not unusually long or complicated. The basic reasons for it to make a decision one way or another is there. And I guess my reaction is, is that this court's job in terms of handling this case doesn't strike me as being particularly greater than a case where the judge had made a decision that it clearly spelled out. The briefs go through the facts. They have a brief that spends a lot of time talking about those initiatives within the city. Our brief focuses very clearly on what happened with this project, and I think this court can make a decision. And I think Judge Hatter made a decision because he saw there was clearly a problem with this lawsuit. And, you know, the concept of obviously going back to the district court to relitigate a case that has been litigated in good faith, and, you know, there was a lot of discovery in this case. Well, and again, I'm just repeating myself, but we don't know whether he decided the case on the statute of limitations or on the merits. We don't know what evidence he relied upon or didn't rely upon. We don't know what facts he judicially noticed or didn't judicially notice. And this is a very fact-intensive case. It may ultimately be pretty simple legally. I suspect it may well be, but there's certainly plenty of facts. There are plenty of facts, but although I'm probably tilting at windmills here, if you look, if you cut through it and look at the facts relating to the statute of limitations, there aren't a lot of facts. It is basically undisputed. There is nothing that occurred in this case after 1996. And what occurred in the Superior Court and the Court of Appeal, State Court of Appeal below, is set out. I mean, a number of those cases are published. This Court can look at that. And my time is up. Thank you, Your Honor. Thank you. Thank you very much. I would like to respond, Your Honor, to a couple of points. First of all, the record is clear that nothing did happen after 1996. However, Myers applies. Everything after 1996 was either an administrative review or a mandamus proceeding. All the way up until January of 2004. What about the argument that your FHA claim is bootstrapped on the earlier claims that you made and you're not entitled to equitable tolling with regard to that because it wasn't one of the claims you originally asserted? Then that is one claim. One claim out of four. So your other claims, the ones that are equitably tolled, are still alive and kicking? Absolutely, Your Honor. Okay. But at least as the FHA claim, do you have any argument that equitable tolling should apply to that? Your Honor, I would direct the Court's attention to the complaint, the initial complaint, where in ‑‑ I'm sorry, I was prepared to address another issue. The initial complaint found on the record at page 190 states that defendants refuse ‑‑ and this is part of the civil rights claim. It asserts that in refusing to perform their duties and in making the demands set forth, respondents and defendants knowingly and intentionally deprived sunset of its rights under the United States Constitution and laws in that. And if we go to paragraph D on page 190 of the record, defendants' refusal to perform their duty has been based on their application of criteria, including without limitation the requirement that sunset's proposed specific plan conform to the boundaries of the planning sections, which would not apply to similarly situated projects with any legitimate or rational basis for doing so in violation of sunset's right to equal protection. Now, of course, it is a piggyback argument, but the facts are exactly the same. It's another claim based on the same factual nexus. Absolutely. And you could, at the trial level, even amend a conformative proof or something like that. Absolutely. That's what you're saying. Yeah, absolutely, Your Honor. The facts would be exactly the same. Cause of action, of course, would be different. But the basis for it, the way that we would prove it up here is the way that we would prove it up. Another remedial statute based on the same facts that you've alleged. Absolutely, Your Honor. The other issue I did want to touch on was that counsel indicated that they were never instructed by a court to prepare the EIR. Well, I would just like to direct the Court's attention to the appellate court's decision at Sunset Drive v. City of Redlands. It can be found on page 201 of the record. And I will start at the last paragraph. Redlands concludes that the duty to prepare an EIR is discretionary, not ministerial, and therefore may not be enforced by mandamus. It is mistaken. A refusal to exercise discretion is itself an abuse of discretion. Accordingly, although mandamus is not available to compel the exercise by a court or officer of the discretion possessed by them in a particular manner or to reach a particular result, it does lie to command the exercise of discretion. The court specifically told them, you cannot just sit on this. You have to make a decision. Their retort is that we don't have to. We can sit back here and you can never get to the mandamus proceedings because we didn't make a final decision. Well, that's counterintuitive. That's been for seven and a half years. And how long has this lawsuit been pending? This lawsuit has been pending since January of 2002. That's another six years. All right. Well, your time has run up, so we will submit this case of Sunset Drive v. Redlands, and the Court will adjourn for this session. Thank you very much, John. Thank you.
judges: Wardlaw, Ikuta, Fogel